UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x
UNITED STATES OF AMERICA            :

                    - v. -          :

DENFIELD JOSEPH,                    :

                    Defendant.      :

- - - - - - - - - - - - - - - - x

USDC SDNY.
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

**ORDER**

S2 17 CR. 314 (VM)

WHEREAS, with the defendant's consent, his guilty plea allocution was made before a United States Magistrate Judge on October 30, 2019;

WHEREAS, a transcript of the allocution was made and thereafter was transmitted to the District Court; and

WHEREAS, upon review of that transcript, this Court has determined that the defendant entered the guilty plea knowingly and voluntarily and that there was a factual basis for the guilty plea;

IT IS HEREBY ORDERED that the defendant's guilty plea is accepted.

SO ORDERED:

Dated:      New York, New York
            November 22, 2019

                          THE HONORABLE VICTOR MARRERO
                          UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - X
UNITED STATES OF AMERICA
                                    :
          - v. -                            **INFORMATION**
                                    :
DENFIELD JOSEPH,                        S$\underline{Q}$ 17 Cr. 314 (VM)
     a/k/a "Joseph Denfield,"       :
     a/k/a "Denny,"
                                    :
               Defendant.

- - - - - - - - - - - - - - - - - X

                    **COUNT ONE**

                **NARCOTICS CONSPIRACY**

     The United States Attorney charges:

     1.   From at least in or about 2009, up to and including in
or about 2011, in the Southern District of New York and
elsewhere, DENFIELD JOSEPH, a/k/a "Joseph Denfield," a/k/a
"Denny," the defendant, and others known and unknown,
intentionally and knowingly did combine, conspire, confederate,
and agree together and with each other to violate the narcotics
laws of the United States.

     2.   It was a part and an object of the conspiracy that
DENFIELD JOSEPH, a/k/a "Joseph Denfield," a/k/a "Denny," the
defendant, and others known and unknown, would and did
distribute and possess with intent to distribute controlled
substances in violation of 21 U.S.C. § 841(a)(1).

     3.   The controlled substance that DENFIELD JOSEPH, a/k/a
"Joseph Denfield," a/k/a "Denny," the defendant, conspired to

distribute and possess with the intent to distribute was 28
grams and more of mixtures and substances containing a
detectable quantity of cocaine base, in a form commonly known as
"crack," in violation of 21 U.S.C. § 841(b)(1)(B).

(Title 21, United States Code, Section 846.)

## FORFEITURE ALLEGATION

4. As a result of committing the controlled substance
offense charged in Count One of this Information DENFIELD
JOSEPH, a/k/a "Joseph Denfield," a/k/a "Denny," the defendant,
shall forfeit to the United States, pursuant to Title 21, United
States Code, Section 853, any and all property constituting or
derived from any proceeds the defendant obtained directly or
indirectly as a result of the offense and any and all property
used or intended to be used in any manner or part to commit and
to facilitate the commission of the offense charged in Count One
of this Information.

## Substitute Assets Provision

5. If any of the above-described forfeitable property, as
a result of any act or omission of DENFIELD JOSEPH, a/k/a
"Joseph Denfield," a/k/a "Denny," the defendant:

a. cannot be located upon the exercise of due
diligence;

b. has been transferred or sold to, or deposited
with, a third person;

2

        c.    has been placed beyond the jurisdiction of the

Court;

        d.    has been substantially diminished in value; or

        e.    has been commingled with other property which

cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to 21 U.S.C.

§ 853(p), to seek forfeiture of any other property of the

defendant up to the value of the above forfeitable property.

        (Title 21, United States Code, Section 853.)

                                        GEOFFREY S. BERMAN
                                        United States Attorney

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

DENFIELD JOSEPH, a/k/a "Joseph Denfield," a/k/a
"Denny,"

Defendant.

### INFORMATION

SZ 17 Cr. 314 (VM)

(21 U.S.C. § 846.)

GEOFFREY S. BERMAN
United States Attorney.

10/36/19  DEFT. PRES W/ATTY YANELLA
AUSA FEINSTEIN COURT REPORTER PRESENT
DEFT WAIVES INDICTMENT AND PLEADS GUILTY TO CT 1
JUDGE COTT RECOMMENDS THAT JUDGE MARRERO ACCEPT PLEA
CONTROL DATE SET FOR
PSI ORDERED
DEFT. DETAINED

COTT, USMJ



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

October 18, 2019

Donald Yanella, Esq.
233 Broadway, Suite 2320
8th Floor
New York, NY 10279

**Re: United States v. Denfield Joseph, S2 17 Cr. 314 (VM)**

Dear Mr. Yanella:

On the understandings specified below, the Office of the United States Attorney for the Southern District of New York ("this Office") will accept a guilty plea from Denfield Joseph ("the defendant") to Count One of the above-referenced Superseding Information (the "Information"). Count One charges the defendant with participating in a conspiracy to distribute and possess with intent to distribute 28 grams or more of mixtures and substances containing a detectable amount of cocaine base, commonly known as "crack," in violation of Title 21, United States Code, Sections 846 and 841(b)(1)(B), which carries a mandatory minimum term of imprisonment of five years, a maximum term of imprisonment of forty years, a maximum term of supervised release of life, a mandatory minimum term of supervised release of four years, a maximum fine, pursuant to Title 18, United States Code, Section 3571 and Title 21, United States Code, Sections 846 and 841(b)(1)(B), of the greatest of $5,000,000, twice the gross pecuniary gain derived from the offense, or twice the gross pecuniary loss to persons other than the defendant resulting from the offense, and a $100 mandatory special assessment. In addition to the foregoing, the Court must order restitution. The defendant agrees to waive any defense or argument based on the statute of limitations applicable to Count One.

As a condition of his guilty plea, the defendant will admit to his participation in the murder of Donnell Harris on or about August 31, 2010.

In consideration of the defendant's plea to the above offense, the defendant will not be further prosecuted criminally by this Office (except for criminal tax violations, if any, as to which this Office cannot, and does not, make any agreement) for his participation in a conspiracy to distribute and possess with intent to distribute cocaine base from at least in or about 2009, up to and including in or about 2011, as charged in Count One of the Information, and his participation in the murder of Donnell Harris on or about August 31, 2010, it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 *et seq.* In addition, at the time of sentencing, the Government will move to dismiss any open Count(s) against the defendant. The defendant agrees that with respect to any

and all dismissed charges he is not a "prevailing party" within the meaning of the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), and will not file any claim under that law.

The defendant furthermore admits the forfeiture allegation with respect to Count One of the Information and agrees to forfeit to the United States, pursuant to Title 21, United States Code, Section 853(a), any and all property constituting or derived from the proceeds the defendant obtained directly or indirectly as a result of the offense charged in the Information and any and all property used or intended to be used in any manner or part to commit or to facilitate the commission of the offense charged in the Information (the "Money Judgment"). It is further understood that any forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon him in addition to forfeiture.

The defendant further agrees to make restitution in an amount ordered by the Court in accordance with Sections 3663, 3663A and 3664 of Title 18, United States Code, and that the obligation to make such restitution shall be made a condition of probation, *see* 18 USC §3563(b)(2), or of supervised release, *see* 18 USC §3583(d), as the case may be.

In consideration of the foregoing and pursuant to United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") Section 6B1.4, the parties hereby stipulate to the following:

A. Offense Level

1. The November 1, 2018 Guidelines manual applies in this case.

2. The Guideline applicable to the offense charged under Count One is U.S.S.G. 2D1.1. Pursuant to U.S.S.G. § 2D1.1(d), because a victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, the Guidelines range is the greater of (a) the offense level set forth in U.S.S.G. § 2A1.1, or (b) the offense level otherwise applicable under § 2D1.1.

3. Pursuant to U.S.S.G. § 2A1.1, the offense level is 43.

4. Pursuant to U.S.S.G. § 2D.1(c)(8), because the offense involved at least 28 grams but less than 112 grams of cocaine base, the offense level is 24.

5. Because the offense level under U.S.S.G. § 2A1.1 is greater than the offense level otherwise applicable, the offense level for Count One is 43.

6. Assuming the defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming the defendant has accepted responsibility as described in the previous sentence, the Government will move at sentencing for an additional one-level reduction, pursuant to U.S.S.G. § 3E1.1(b), because the defendant gave timely notice of his intention to enter a plea of

guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

In accordance with the above, the applicable Guidelines offense level is 40.

B. Criminal History Category

Based upon the information now available to this Office (including representations by the defense), the defendant has four criminal history points.

1. On or about April 5, 2017, the defendant was convicted, in New York County Criminal Court, of Fraudulent Accosting, in violation of New York Penal Law § 165.30. He was sentenced to a conditional discharge. Pursuant to U.S.S.G. § 4A1.1(c), this sentence results in one criminal history point.

2. On or about October 28, 2016, the defendant was convicted, in New York County Criminal Court, of Criminal Possession of a Controlled Substance in the Seventh Degree, in violation of New York Penal Law § 220.03. He was sentenced to a conditional discharge. Pursuant to U.S.S.G. § 4A1.1(c), this sentence results in one criminal history point.

3. On or about May 17, 2016, the defendant was convicted, in New York County Criminal Court, of Criminal Possession of a Controlled Substance in the Seventh Degree, in violation of New York Penal Law § 220.03. He was sentenced to seven days' imprisonment. Pursuant to U.S.S.G. § 4A1.1(c), this sentence results in one criminal history point.

4. On or about February 6, 2016, the defendant was convicted, in New York County Criminal Court, of Petit Larceny, in violation of New York Penal Law § 155.25. He was sentenced to time served. Pursuant to U.S.S.G. § 4A1.1(c), this sentence results in one criminal history point.

5. On or about July 13, 2015, the defendant was convicted, in New York County Criminal Court, of Intent to Obtain Transportation Without Paying, in violation of New York Penal Law § 165.15(3). He was sentenced to time served. Pursuant to U.S.S.G. § 4A1.2(c)(1) and *United States v. Sanders*, 205 F.3d 594 (2d Cir. 2000), this sentence results in zero criminal history points.

6. On or about April 23, 2015, the defendant was convicted, in New York County Criminal Court, of Obstruction of Governmental Administration in the Second Degree, in violation of New York Penal Law § 195.05. He was sentenced to 20 days' imprisonment. Pursuant to U.S.S.G. § 4A1.1(c), this sentence results in zero criminal history points.

7. On or about January 18, 2015, the defendant was convicted, in New York County Criminal Court, of Unlawful Possession of Marijuana, in violation of New York Penal Law § 221.05. He received a fine. Pursuant to U.S.S.G. § 4A1.1(c), this sentence results in zero criminal history points.

8. On or about April 29, 2010, the defendant was convicted, in Bronx County Criminal Court, of Unlawful Possession of Marijuana, in violation of New York Penal Law § 221.05. He

received a fine. Pursuant to U.S.S.G. § 4A1.1(c), this sentence results in zero criminal history points.

9. On or about November 17, 2008, the defendant was convicted, in Bronx County Criminal Court, of Trespass, in violation of New York Penal Law § 140.05. He was sentenced to conditional discharge. Pursuant to U.S.S.G. § 4A2.1(c)(1), this sentence results in zero criminal history points.

In accordance with the above, the defendant's Criminal History Category is III.

C. Sentencing Range

Based upon the calculations set forth above, the defendant's applicable Guidelines range would be 360 months to life imprisonment, with a mandatory minimum term of 60 months' imprisonment. Pursuant to U.S.S.G. § 5G1.1(c), because the statutorily authorized maximum sentence of 480 months is less than the maximum of the otherwise applicable Guidelines range, the stipulated Guidelines range is 360 to 480 months' imprisonment (the "Stipulated Guidelines Range"), with a mandatory minimum term of 60 months' imprisonment. In addition, after determining the defendant's ability to pay, the Court may impose a fine pursuant to U.S.S.G. § 5E1.2. At Guidelines level 40, the applicable fine range is $50,000 to $5,000,000.

The parties agree that neither a downward nor an upward departure from the Stipulated Guidelines Range set forth above is warranted. Accordingly, neither party will seek any departure or adjustment pursuant to the Guidelines that is not set forth herein. Nor will either party in any way suggest that the Probation Office or the Court consider such a departure or adjustment under the Guidelines.

The parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a).

Except as provided in any written Proffer Agreement(s) that may have been entered into between this Office and the defendant, nothing in this Agreement limits the right of the parties (i) to present to the Probation Office or the Court any facts relevant to sentencing; (ii) to make any arguments regarding where within the Stipulated Guidelines Range (or such other range as the Court may determine) the defendant should be sentenced and regarding the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a); (iii) to seek an appropriately adjusted Guidelines range if it is determined based upon new information that the defendant's criminal history category is different from that set forth above; and (iv) to seek an appropriately adjusted Guidelines range or mandatory minimum term of imprisonment if it is subsequently determined that the defendant qualifies as a career offender under U.S.S.G. § 4B1.1. Nothing in this Agreement limits the right of the Government to seek denial of the adjustment for acceptance of responsibility, *see* U.S.S.G. § 3E1.1, regardless of any stipulation set forth above, if the defendant fails clearly to demonstrate acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence. Similarly, nothing in this Agreement limits the right of the Government to seek an enhancement

for obstruction of justice, *see* U.S.S.G. § 3C1.1, regardless of any stipulation set forth above, should it be determined that the defendant has either (i) engaged in conduct, unknown to the Government at the time of the signing of this Agreement, that constitutes obstruction of justice or (ii) committed another crime after signing this Agreement.

It is understood that pursuant to U.S.S.G. § 6B1.4(d), neither the Probation Office nor the Court is bound by the above Guidelines stipulation, either as to questions of fact or as to the determination of the proper Guidelines to apply to the facts. In the event that the Probation Office or the Court contemplates any Guidelines adjustments, departures, or calculations different from those stipulated to above, or contemplates any sentence outside of the stipulated Guidelines range, the parties reserve the right to answer any inquiries and to make all appropriate arguments concerning the same.

It is understood that the sentence to be imposed upon the defendant is determined solely by the Court. It is further understood that the Guidelines are not binding on the Court. The defendant acknowledges that his entry of a guilty plea to the charged offenses authorizes the sentencing court to impose any sentence, up to and including the statutory maximum sentence. This Office cannot, and does not, make any promise or representation as to what sentence the defendant will receive. Moreover, it is understood that the defendant will have no right to withdraw his plea of guilty should the sentence imposed by the Court be outside the Guidelines range set forth above.

It is agreed (i) that the defendant will not file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 360 to 480 months' imprisonment, and (ii) that the Government will not appeal any sentence within or above the Stipulated Guidelines Range. This provision is binding on the parties even if the Court employs a Guidelines analysis different from that stipulated to herein. Furthermore, it is agreed that any appeal as to the defendant's sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) the above stipulation. The parties agree that this waiver applies regardless of whether the term of imprisonment is imposed to run consecutively to or concurrently with the undischarged portion of any other sentence of imprisonment that has been imposed on the defendant at the time of sentencing in this case. The defendant further agrees not to appeal any term of supervised release that is less than or equal to the statutory maximum. The defendant also agrees not to appeal any fine that is less than or equal to $5,000,000 and the Government agrees not to appeal any fine that is greater than or equal to $50,000. The defendant also agrees not to appeal any special assessment that is less than or equal to $100. Notwithstanding the foregoing, nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights.

The defendant hereby acknowledges that he has accepted this Agreement and decided to plead guilty because he is in fact guilty. By entering this plea of guilty, the defendant waives any and all right to withdraw his plea or to attack his conviction, either on direct appeal or collaterally, on the ground that the Government has failed to produce any discovery material, *Jencks* Act

2019.04.05

material, exculpatory material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), other than information establishing the factual innocence of the defendant, or impeachment material pursuant to *Giglio v. United States*, 405 U.S. 150 (1972), that has not already been produced as of the date of the signing of this Agreement.

The defendant recognizes that, if he is not a citizen of the United States, his guilty plea and conviction make it very likely that his removal from the United States is presumptively mandatory and that, at a minimum, he is at risk of being removed or suffering other adverse immigration consequences. If the defendant is a naturalized citizen of the United States, he recognizes that pleading guilty may have consequences with respect to the defendant's immigration status. For example, under federal law, an individual may be subject to denaturalization and removal if his naturalization was procured by concealment of a material fact or by willful misrepresentation, or otherwise illegally procured. The defendant acknowledges that he has discussed the possible immigration consequences (including removal or denaturalization) of his guilty plea and conviction with defense counsel. The defendant affirms that he wants to plead guilty regardless of any immigration or denaturalization consequences that may result from the guilty plea and conviction, even if those consequences include denaturalization and/or removal from the United States. The defendant understands that denaturalization and other immigration consequences are typically the subject of a separate proceeding, and the defendant understands that no one, including his attorney or the District Court, can predict with certainty the effect of the defendant's conviction on the defendant's immigration or naturalization status. It is agreed that the defendant will have no right to withdraw his guilty plea based on any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from the guilty plea and conviction. It is further agreed that the defendant will not challenge his conviction or sentence on direct appeal, or through litigation under Title 28, United States Code, Section 2255 and/or Section 2241, on the basis of any actual or perceived adverse immigration consequences (including removal or denaturalization) resulting from his guilty plea and conviction.

It is further agreed that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the Government has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

It is further understood that this Agreement does not bind any federal, state, or local prosecuting authority other than this Office.

Apart from any written Proffer Agreement(s) that may have been entered into between this Office and defendant, this Agreement supersedes any prior understandings, promises, or conditions between this Office and the defendant. No additional understandings, promises, or conditions have been entered into other than those set forth in this Agreement, and none will be entered into unless in writing and signed by all parties.

Very truly yours,

GEOFFREY S. BERMAN
United States Attorney

By:  _Jessica N. Feinstein_
Jessica Feinstein
Allison Nichols
Assistant United States Attorneys
(212) 637-1946

APPROVED:

_Michael Gerber_
Michael Gerber
Chief, Violent & Organized Crime Unit

AGREED AND CONSENTED TO:

_Denfield Joseph_
DENFIELD JOSEPH

_10/30/19_
DATE

APPROVED:

_Donald Yanella_
DONALD YANELLA, ESQ.
Attorney for Denfield Joseph

~~10/28/19~~ 10/30/19
DATE

Jau1josp

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        17 Cr. 314

5   DENFIELD JOSEPH,

6              Defendant.               Plea

7   ------------------------------x

8                                       New York, N.Y.
                                        October 30, 2019
9                                       11:36 a.m.

10
    Before:
11
                   HON. JAMES L. COTT,
12
                                        Magistrate Judge
13

14                      APPEARANCES

15  GEOFFREY S. BERMAN
         United States Attorney for the
16       Southern District of New York
    BY:  JESSICA K. FEINSTEIN
17       Assistant United States Attorney

18  DONALD J. YANNELLA, III, ESQ.
         Attorney for Defendant
19

20

21

22

23

24

25

Jau1josp

1    (Case called)

2    THE DEPUTY CLERK:  Counsel, please state your name for

3    the record.

4    MS. FEINSTEIN:  Good morning, your Honor.  Jessica

5    Feinstein for the government.

6    THE COURT:  Good morning, Ms. Feinstein.

7    MR. YANNELLA:  For Denfield Joseph, Donald Yannella.

8    Good morning.

9    THE COURT:  Good morning, Mr. Yannella.  Good morning,

10   Mr. Joseph.

11   Mr. Joseph, I have in front of me a Consent to Proceed

12   Before a United States Magistrate Judge On a Felony Plea

13   Allocution form that you've signed.  What the form says is that

14   knowing that you have the right to have your plea taken before

15   a United States district judge, you are agreeing to have your

16   plea taken here this morning in magistrate's court before me, a

17   United States magistrate judge.  Is that correct?

18   THE DEFENDANT:  Yes.

19   THE COURT:  And before you signed the form did

20   Mr. Yannella explain this to you?

21   THE DEFENDANT:  Yes.

22   THE COURT:  All right.  I will accept the consent form

23   and we will proceed.

24   Okay.  Now, Mr. Joseph, the purpose of this proceeding

25   today is to make sure that you understand your rights, to

Jau1josp

1  decide whether you're pleading guilty of your own free will,
2  and to make sure you're pleading guilty because you are guilty
3  and not for some other reason. Do you understand that?

4      THE DEFENDANT: Yes.

5      THE COURT: If at any time you don't understand any of
6  the questions that I'm going to ask you during this proceeding
7  or if you wish to consult with Mr. Yannella, just let me know
8  that, because it is extremely important that you understand
9  every question before you answer. Okay?

10      THE DEFENDANT: Yes.

11      THE COURT: Now before I take your plea, as I said, I
12  must ask you a series of questions, and I therefore need to
13  place you under oath. So if you'll please stand and raise your
14  right hand.

15      (Defendant sworn)

16      THE COURT: Do you understand that any statements that
17  you make here today under oath may be used against you in a
18  prosecution for perjury or for making false statements if you
19  do not tell the truth?

20      THE DEFENDANT: Yes.

21      THE COURT: Now I have in front of me a waiver of
22  indictment. Did you sign this waiver of indictment?

23      THE DEFENDANT: Yes.

24      THE COURT: Before you signed it did you discuss it
25  with your attorney?

Jau1josp

| | |
|---|---|
| 1 | THE DEFENDANT: Yes. |
| 2 | THE COURT: And do you understand what you are doing |
| 3 | by signing the waiver of indictment? |
| 4 | THE DEFENDANT: Yes. |
| 5 | THE COURT: Do you understand that you are under no |
| 6 | obligation to waive indictment? |
| 7 | THE DEFENDANT: Yes. |
| 8 | THE COURT: And do you understand that if you do not |
| 9 | waive indictment, if the government wants to prosecute you, |
| 10 | they would have to present this case to a grand jury, which may |
| 11 | or may not indict you? |
| 12 | THE DEFENDANT: Yes. |
| 13 | THE COURT: And do you realize that by signing the |
| 14 | waiver of indictment, you've given up your right to have the |
| 15 | case presented to a grand jury? |
| 16 | THE DEFENDANT: Yes. |
| 17 | THE COURT: And do you understand what a grand jury |
| 18 | is? |
| 19 | THE DEFENDANT: Yes. |
| 20 | THE COURT: Have you seen a copy of the information? |
| 21 | THE DEFENDANT: Yes. |
| 22 | THE COURT: And do you waive its public reading? |
| 23 | THE DEFENDANT: Yes. |
| 24 | THE COURT: And how do you wish to plead to the |
| 25 | information, guilty or not guilty? |

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Jau1josp

1              THE DEFENDANT:  Guilty.

2              THE COURT:  You may be seated.

3              Mr. Joseph, could you please state your full name for

4      the record.

5              THE DEFENDANT:  Denfield Nyah Joseph.

6              THE COURT:  How old are you, sir?

7              THE DEFENDANT:  28.

8              THE COURT:  Are you a citizen of the United States?

9              THE DEFENDANT:  Yes.

10             THE COURT:  Are you able to read and write in English?

11             THE DEFENDANT:  Yes.

12             THE COURT:  How far did you go in school?

13             THE DEFENDANT:  Tenth grade.

14             THE COURT:  Are you now or have you recently been

15     under the care of a doctor or a psychiatrist for any reason?

16             THE DEFENDANT:  Not in recent years, no.

17             THE COURT:  Not in recent years?

18             THE DEFENDANT:  No.

19             THE COURT:  Okay.  Have you recently been treated for

20     any mental illness or addiction to alcohol or narcotic drugs of

21     any kind?

22             THE DEFENDANT:  Not in the past couple years.

23             THE COURT:  All right.  As you sit here today, are you

24     under the influence of any mind-altering drug or any alcoholic

25     drink?

Jau1josp

1          THE DEFENDANT:  No.

2          THE COURT:  Are you on any medication?

3          THE DEFENDANT:  No.

4          THE COURT:  Have you been able to understand

5    everything that I have said to you so far today?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And you feel all right today?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Mr. Yannella, do you have any questions

10   about your client's competence?

11          MR. YANNELLA:  No.

12          THE COURT:  And does the government have any issues or

13   concerns about that?

14          MS. FEINSTEIN:  No, your Honor.

15          THE COURT:  Any additional questions either counsel

16   wish me to ask about that subject?

17          MR. YANNELLA:  No.

18          MS. FEINSTEIN:  No, your Honor.

19          THE COURT:  All right.  Mr. Joseph, have you seen the

20   information in this case?  I think you said you've seen it,

21   yes?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Have you read it?

24          THE DEFENDANT:  Yes.

25          THE COURT:  And do you understand what it says that

Jau1josp

1   you did?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Have you had a chance to discuss the

4   charges in the information and how you wish to plead with

5   Mr. Yannella?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Are you satisfied with his representation

8   of you?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And have you had a full opportunity to

11  discuss the case with him?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Has he discussed with you the consequences

14  of pleading guilty?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Are you ready to enter a plea at this

17  time?

18             THE DEFENDANT:  Yes.

19             THE COURT:  Now let me review with you the charges in

20  Count One of the information.  I guess technically it's a

21  superseding information; is that right, Ms. Feinstein?

22             MS. FEINSTEIN:  That's correct.

23             THE COURT:  But I'm going to refer to it throughout

24  this proceeding as an information.  So let me review with you

25  now Count One of the information and the penalties that are

Jau1josp

1    associated with the charges in Count One.

2         Count One charges you with participating in a

3    conspiracy to distribute and possess with intent to distribute

4    28 grams or more of mixtures and substances containing a

5    detectable amount of cocaine base, commonly known as crack, in

6    violation of federal law, which carries a mandatory minimum

7    term of imprisonment of five years; a maximum term of

8    imprisonment of 40 years; a maximum term of supervised release

9    of life; a mandatory minimum term of supervised release of four

10   years; a maximum fine pursuant to federal law of the greatest

11   of $5 million, twice the gross gain derived from the offense,

12   or twice the gross loss to persons other than you resulting

13   from the offense; and a $100 mandatory special assessment.

14        Do you understand the charges in Count One of the

15   information and the penalties that are associated with that

16   charge?

17        THE DEFENDANT:  Yes.

18        THE COURT:  How do you wish to plead to Count One of

19   the information, guilty or not guilty?

20        THE DEFENDANT:  Guilty.

21        THE COURT:  And do you understand that as part of your

22   agreement with the government, the Court can and may order

23   restitution in this case?

24        THE DEFENDANT:  Yes.

25        THE COURT:  And am I right that as part of your

Jauljosp

1  agreement with the government, you're agreeing to waive any

2  defense or argument based on the statute of limitations

3  applicable to Count One of the information? Is that correct?

4          THE DEFENDANT: Yes.

5          THE COURT: All right. Do you also understand,

6  Mr. Joseph, that if as part of your sentence you're placed on a

7  term of supervised release and you violated any of the

8  conditions of that release, you could face an additional term

9  of imprisonment, is that correct? Do you understand that?

10          THE DEFENDANT: Yes.

11          THE COURT: And am I right that as part of your

12  agreement with the government, you are admitting the forfeiture

13  allegation with respect to Count One of the information? Is

14  that right?

15          THE DEFENDANT: Yes.

16          THE COURT: And you are agreeing as part of your

17  agreement with the government to make restitution in an amount

18  to be ordered by the court in accordance with federal law, is

19  that correct?

20          THE DEFENDANT: Yes.

21          THE COURT: Are there any other questions,

22  Ms. Feinstein, that you wish me to ask the defendant about

23  Count One, the charges and the penalties associated therewith?

24          MS. FEINSTEIN: No, your Honor.

25          THE COURT: Mr. Yannella, have I covered it

Jauljosp

1    sufficiently for your purposes as well?

2          MR. YANNELLA:  Yes.

3          THE COURT:  All right.  Do you understand,

4    Mr. Joseph -- you said earlier that you were a citizen of the

5    United States, but I must still tell you that if in fact you

6    are not a United States citizen, then a guilty plea would mean

7    that you may be removed from the United States and denied

8    admission to the United States or citizenship in the future.

9    Do you understand that?

10          THE DEFENDANT:  Yes.

11          THE COURT:  And do you understand that you're bound by

12    your guilty plea regardless of the immigration consequences of

13    your plea and regardless of any advice you have received from

14    your attorney or anyone else regarding those consequences?  Do

15    you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Have you specifically discussed this

18    subject with Mr. Yannella?

19          THE DEFENDANT:  Once upon a time, I believe so.

20          THE COURT:  Okay.  Now at this time, Mr. Joseph, I'm

21    going to explain a number of constitutional rights that you

22    have, but these are rights that you'll be giving up as a result

23    of a guilty plea here today.

24          Do you understand, first of all, that you have a right

25    to plead not guilty to the charge in the information and a

Jau1josp

1   right to a speedy and public jury trial if you wish?

2           THE DEFENDANT:  Yes.

3           THE COURT:  And do you understand that if you were to

4   plead not guilty and go to trial, you would be presumed

5   innocent and the burden would be on the government to prove

6   your guilt beyond a reasonable doubt?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Do you understand that you would be

9   entitled to be represented by an attorney at all stages of the

10  case, at trial, and at every other stage of the proceedings,

11  and if you could not afford to hire or retain an attorney, the

12  court would provide an attorney to you for free?

13          THE DEFENDANT:  I understand.

14          THE COURT:  Do you understand that if there were a

15  trial in your case, you would be entitled to confront and

16  cross-examine any witnesses called by the government to testify

17  against you?

18          THE DEFENDANT:  Yes.

19          THE COURT:  And do you understand you'd be entitled to

20  testify on your own behalf?

21          THE DEFENDANT:  Yes.

22          THE COURT:  And do you understand you could call

23  witnesses and present evidence at the trial?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you understand that you could ask the

Jauljosp

1  court to issue subpoenas to compel witnesses to appear and

2  testify in your defense even if they did not otherwise wish to

3  come to court?

4      THE DEFENDANT: Yes.

5      THE COURT: Do you understand that if there were a

6  trial, you would not be required to testify against yourself?

7      THE DEFENDANT: Yes.

8      THE COURT: And do you understand that if you chose

9  not to testify, that fact could not be used against you?

10     THE DEFENDANT: Yes.

11     THE COURT: And do you understand further that if you

12 went to trial and you were convicted at the trial, you would

13 still have the right to appeal that conviction to a higher

14 court?

15     THE DEFENDANT: Yes.

16     THE COURT: And do you understand that by entering a

17 guilty plea here today, you'll be giving up all of the rights

18 that I've just reviewed with you, including your right to a

19 trial, you will not be able to withdraw your guilty plea, and

20 the only remaining step in this case will be the sentencing?

21 Do you understand that?

22     THE DEFENDANT: Yes.

23     THE COURT: Do you understand that the decision as to

24 the appropriate sentence in your case will be entirely up to

25 the sentencing judge, who in this case is Judge Marrero, and he

Jau1josp

1  will be limited only by what the law requires?

2          THE DEFENDANT: Yes.

3          THE COURT: Do you understand that even if you are

4  surprised or disappointed by your sentence, you will still be

5  bound by your guilty plea?

6          THE DEFENDANT: Yes.

7          THE COURT: And knowing everything I've just reviewed

8  with you, do you still wish to plead guilty to Count One of the

9  information?

10          THE DEFENDANT: Yes.

11          THE COURT: Has any force or have any threats of force

12  been used, either directly or indirectly, to influence how you

13  plead today?

14          THE DEFENDANT: No.

15          THE COURT: Now I have before me an agreement dated

16  October 18, 2019, from the government to Mr. Yannella,

17  containing a plea agreement. Have you read this letter?

18          THE DEFENDANT: Yes.

19          THE COURT: Did you sign it on the last page?

20          THE DEFENDANT: Yes.

21          THE COURT: Before you signed it did you discuss it

22  with your attorney?

23          THE DEFENDANT: Yes.

24          THE COURT: Did he explain to you all of its terms and

25  conditions?

Jauljosp

1     THE DEFENDANT:  Yes.

2     THE COURT:  Apart from what's contained in this
3   letter, have any promises been made to you in order to get you
4   to plead guilty?

5     THE DEFENDANT:  No.

6     THE COURT:  Now in reviewing the plea agreement, I
7   note that it contains an analysis of how part of our law of
8   sentencing, known as the Sentencing Guidelines, may impact on
9   any prison term in your case.  Based on that analysis, on
10   page 4, it says that the applicable guideline range is 360
11   months to life imprisonment, with a mandatory minimum term of
12   60 months' imprisonment, and it also says that pursuant to the
13   guidelines, because the statutorily authorized maximum sentence
14   of 480 months is less than the maximum of the otherwise
15   applicable guideline range, then the stipulated guideline range
16   in your case is 360 to 480 months' imprisonment, with a
17   mandatory minimum term of 60 months' imprisonment.  Do you
18   understand all of that?

19     THE DEFENDANT:  Yes.

20     THE COURT:  Now do you understand that Judge Marrero
21   is not bound by the calculation in this letter and he's going
22   to be free to do his own calculation, which may result in a
23   guideline range that's different from the one that's in the
24   letter?

25     THE DEFENDANT:  Yes.

Jau1josp

1       THE COURT: Do you understand that no matter what

2   sentencing range Judge Marrero believes is called for by the

3   guidelines, that range is just one of many factors that he's

4   going to consider in determining your sentence and he has the

5   discretion to give you a prison sentence below or above the

6   range, anywhere up to the maximum sentence of 40 years'

7   imprisonment that we spoke about a few minutes ago? Do you

8   understand that?

9       THE DEFENDANT: Yes.

10      THE COURT: Do you understand that as part of the

11  terms of your plea agreement that if Judge Marrero were to

12  sentence you to a prison term that is 480 months or less,

13  you'll be giving up your right to appeal that sentence or to

14  challenge it in any other way such as through a writ of habeas

15  corpus?

16      THE DEFENDANT: Yes.

17      THE COURT: Also, do you understand that the plea

18  agreement states -- and this is on page 5 -- that you agree not

19  to appeal any fine that is less than or equal to $5 million and

20  you also agree not to appeal any special assessment that is

21  less than or equal to $100? Do you understand that?

22      THE DEFENDANT: Yes.

23      THE COURT: Do you also understand that you cannot

24  appeal any lawful sentence of supervised release?

25      THE DEFENDANT: Yes.

Jauljosp

1      THE COURT: Do you also understand that in the letter
2    you're giving up your right to complain if the government
3    withheld evidence from your attorney that would have been
4    helpful to you? Do you understand that?
5           THE DEFENDANT: Yes.
6           THE COURT: Now, Mr. Joseph, is your plea voluntary?
7    And what I mean by that is, is it made of your own free will?
8           THE DEFENDANT: Yes.
9           THE COURT: Did you in fact commit the offense that's
10   charged in Count One of the information?
11          THE DEFENDANT: Yes.
12          THE COURT: Before I ask you to tell the Court what
13   you did, I'm going to ask the government to summarize the
14   elements of the offense and, if it wishes, to advise the Court
15   what the evidence would have been had there been a trial in
16   your case.
17          Ms. Feinstein?
18          MS. FEINSTEIN: Thank you, your Honor.
19          At trial, the government would have to prove beyond a
20   reasonable doubt each of the following elements of the
21   narcotics conspiracy charged in Count One of the superseding
22   information:
23          First, an agreement between two or more persons to
24   violate the narcotics laws of the United States existed;
25          Second, the defendant knowingly and wilfully entered

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Jauljosp

1    into the conspiracy; and

2         Third, the object of the conspiracy was the

3    distribution or the possession, distribution of 28 grams or

4    more of cocaine base, commonly known as crack.

5         The government would also have to prove venue in the

6    Southern District of New York.

7         And at trial, the government would have proceeded to

8    present evidence including witness testimony, surveillance

9    video, statements of the defendant, among other evidence.

10        THE COURT: All right. Thank you, Ms. Feinstein.

11        Mr. Joseph, will you now please tell the Court in your

12   own words what you did that makes you guilty of the charge in

13   the information. And if you're going to read something, that's

14   entirely fine, but please read slowly and pull the microphone

15   close so that the court reporter and I are able to hear you.

16        THE DEFENDANT: Okay. In between 2009 and 2011, I

17   agreed with others in the Bronx to distribute cocaine base. I

18   helped buy crack cocaine and sell it. In furtherance of that

19   conspiracy, I helped murder Donnell Harris, who was known as

20   Sonny, on October 31, 2010. I helped murder Donnell Harris by

21   stabbing him with a knife with intent to murder him. And I

22   knew my actions were illegal.

23        THE COURT: Was the object of the conspiracy the

24   distribution of 28 grams or more of cocaine base?

25        THE DEFENDANT: Yes, sir.

Jau1josp

1    THE COURT: And was this somewhere in the Southern

2  District of New York?

3    THE DEFENDANT: I believe so, sir, yes.

4    THE COURT: Was it in the Bronx?

5    THE DEFENDANT: In the Bronx, yes.

6    THE COURT: All right. Ms. Feinstein, other questions

7  you want me to ask Mr. Joseph?

8    MS. FEINSTEIN: No, your Honor.

9    THE COURT: Mr. Yannella, any other questions?

10    MR. YANNELLA: No, your Honor.

11    THE COURT: All right. Does the government represent

12  that it has sufficient evidence to establish the defendant's

13  guilt beyond a reasonable doubt?

14    MS. FEINSTEIN: Yes.

15    THE COURT: Mr. Yannella, do you know of any defense

16  that would prevail at trial or any other reason why your client

17  should not be permitted to plead guilty?

18    MR. YANNELLA: No.

19    THE COURT: All right. Mr. Joseph, are you pleading

20  guilty because you are guilty?

21    THE DEFENDANT: Yes.

22    THE COURT: Are there any further questions of any

23  kind on any subject that either counsel wants me to ask before

24  we wrap up these proceedings?

25 .    MR. YANNELLA: No.

Jau1josp

1          MS. FEINSTEIN:  Not from the government.

2          THE COURT:  All right.  On the basis of Mr. Joseph's

3     responses to my questions and my observations of his demeanor,

4     I find that he is fully competent to enter an informed plea at

5     this time.  I also conclude that he understands the nature of

6     the charge in the information and the consequences of his plea.

7     And finally, I am satisfied that his plea is voluntary and that

8     there is a factual basis for it.  Accordingly, I recommend that

9     the proffered plea to Count One of the information be accepted.

10         I assume the government will order a copy of the

11    transcript and will submit it to Judge Marrero, together with

12    any additional paperwork, so that he may act on this

13    recommendation.

14         MS. FEINSTEIN:  Yes, your Honor.

15         THE COURT:  Has he scheduled a sentencing date?

16         MS. FEINSTEIN:  He has not.

17         THE COURT:  We'll set a control date of January 28,

18    2020, but I assume you'll be in touch with his chambers to get

19    a date certain.

20         In any event, the prosecution case summary for

21    purposes of the presentence report should be delivered to

22    probation in the next 14 days.

23         And Mr. Yannella, you should make yourself available

24    with Mr. Joseph in the next 14 days or as soon thereafter as

25    you can to be interviewed by probation.

Jau1josp

1          Is there anything else from the government at this

2     time?

3          MS. FEINSTEIN:  Nothing.  Thank you.

4          THE COURT:  Anything else from the defense?

5          MR. YANNELLA:  No.

6          THE COURT:  All right.  Thank you.

7          Have a good afternoon, Mr. Joseph.

8          THE DEFENDANT:  Thank you.

9                          o0o

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25